*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HELSEL/WILLIAMS, Minors.

UNPUBLISHED
September 29, 2022

No. 359473
Crawford Circuit Court
Family Division
LC No. 19-004513-NA

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court's order terminating her parental rights to the minor children, LH and LW, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent).[2] We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In June 2019, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court authorize the petition and issue an order removing LH and LW from respondent's home. The petition alleged that it was contrary to the children's welfare to remain in respondent's care because of her ongoing substance abuse, hazardous housing conditions, and continuous improper supervision of five-year-old LH, who had developmental delays, and two-year-old LW. Respondent repeatedly tested positive for methamphetamine as well as other substances that she denied voluntarily taking, but suggested were combined with the methamphetamine. Respondent's home was in deplorable condition with hazardous material where the children could access it. Respondent also repeatedly left her children alone. On one

---

[1] LH's father was a respondent below and his rights were also terminated; however, he is not a party to this appeal. LW's father could not be located and he is not a party to this appeal.

[2] The trial court initially also found grounds to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(g). Later, however, the trial court determined this particular statutory ground was not proven because the petition included incorrect statutory language.

date, the children left the apartment and roamed around the building. Respondent pleaded to the allegations in an amended petition and the trial court accepted her plea.

To address these issues, respondent's Parent Agency Treatment Plan (PATP) required her to (1) improve her parenting skills by attending and benefiting from parenting classes, (2) address her emotional stability by participating in a psychological evaluation and participating in and benefiting from therapy, (3) address her substance abuse by attending substance abuse treatment and participating in random drug screens, (4) obtain and maintain suitable and appropriate housing, (5) attend and show a benefit by attending a trauma-informed parenting class to improve her ability to manage her children's behavior, (6) participate in her children's therapeutic services, and (7) provide DHHS with signed releases to allow it to communicate with her service providers.

Almost twenty-one months after the petition was filed and despite the trial court's repeated admonitions regarding the importance of participating in services, respondent failed to substantially engage. The court ordered DHHS to file a termination petition, which it did in April 2021.

At the termination hearing, the DHHS caseworker from 2019 through February 2021 testified that respondent exhibited "minimal to no engagement in services" when she was working on the case, and that respondent consistently tested positive for substances, failed to follow through with referrals for therapy and trauma-informed parenting classes, and failed to attend her children's medical appointments and trauma assessments. Respondent completed one parenting class and informed her caseworker that she was attending therapy, but respondent refused to provide her caseworker with information about her therapist.

The next caseworker worked with the family from March 2021, and testified that overall respondent did not substantially comply with the PATP's requirements. Although respondent eventually attended a trauma-informed parenting class in June 2021, after the termination hearings began, she did not attend until after she had received two referrals. Moreover, respondent was not involved in her children's therapy. Respondent did not follow through with counseling referrals until March 2021, did not attend a psychological evaluation, did not provide verification of any of the services she participated in, did not show any benefit from services relating to her emotional stability or parenting skills, did not inform her caseworker she was engaged in substance abuse treatment, and tested positive for substances through the end of January 2021. Although the caseworker eventually received proof that respondent was engaged with services in 2021, the caseworker did not know whether respondent was benefiting from those services because the caseworker did not receive any reports from respondent's counselor and only received reports from respondent's substance abuse treatment center in March 2021. The caseworker further testified that respondent had difficulty regulating the children during parenting time because of their behavioral issues, in particular LH's autism and ADHD. Both children had abandonment issues resulting from respondent leaving them home alone and suffered from post-traumatic stress disorder. Respondent, however, did not understand that her children's behaviors were associated with the trauma they experienced and did not understand that her children needed to be kept in a safe environment at all times. Overall, the caseworker believed that although respondent loved her children, they needed stability and consistency and that it was not in their best interests to prolong their foster-care placement to see whether respondent maintained her sobriety and improved her parenting skills.

Respondent testified that she began using heroin when she was twelve. From 2007 to 2009, she attended substance-abuse treatment five times and relapsed multiple times. Respondent admitted that she did not know how many times she relapsed and recovered because she never counted. After respondent's father died in 2009, respondent remained substance free, except for marijuana. But she relapsed in 2019. Respondent admitted to using methamphetamine in 2019, 2020 and 2021. Since January 11, 2021, however, respondent had been "clean," and since March 2021, she had engaged in substance-abuse treatment at Adult Treatment Services. Regarding respondent's parenting skills, she asserted that she benefited from the parenting class she attended and was learning how to regulate her children's behavior. During one of the initial termination hearings, however, respondent admitted that she did not know what a trauma-informed parenting class was, even though her PATP required her to attend. In June 2021, respondent attended a two-hour trauma-informed parenting class. In March 2021, respondent also began attending therapy. Respondent further acknowledged that she failed to complete a psychological evaluation. And she admitted that she had not signed a release allowing her caseworkers to access information about her counseling sessions because she did not trust them. Regarding housing, respondent owned up to prior evictions and unstable housing throughout this case. But, on August 1, 2021, she was signing a lease on a suitable home and was employed full-time.

The trial court concluded that there was clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (j), and that it was in the children's best interests to terminate respondent's parental rights.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding clear and convincing evidence to terminate her parental rights because none of the statutory grounds for termination were established.

A trial court's determination of statutory grounds for termination is reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 272-273 (quotation marks and citation omitted). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

Respondent first contends that the trial court erred by finding that the statutory ground for termination pursuant to MCL 712A.19b(3)(c)(*i*) was met because she rectified all of the conditions the led to the adjudication.

MCL 712A.19b(3)(c)(*i*) provides:

> (3) The court may terminate a parent's parental rights to a child if the court

finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination of parental rights under MCL 712A.19b(3)(c)(*i*) is proper when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the trial court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

In this case, the conditions that led to adjudication were respondent's substance abuse, inappropriate housing, and her lack of parenting skills as evidenced by her physical neglect of her children, especially her improper supervision. Respondent pleaded to these allegations in the petition.[3]

The totality of the evidence supports the conclusion that respondent did not make any meaningful change or progress in rectifying the conditions that led to adjudication. See *Williams*, 286 Mich App at 272. Nor was there a reasonable likelihood that these issues would be rectified within a reasonable amount of time considering the children's ages. MCL 712A.19b(3)(c)(*i*).

Respondent failed to rectify her parenting issues and failed to substantially participate in services throughout this case. Respondent completed one parenting class in October 2020, but did not engage in additional services to improve her parenting skills until she attended a two-hour trauma-informed parenting class in June 2021, after the termination hearings began. The court noted that the two-hour class was not the same as the trauma-informed parenting class respondent was referred to twice. In her testimony, respondent purported to be unaware of what a trauma-informed parenting class was and claimed she had never been notified of it despite it being part of her PATP and having failed to follow through with two earlier referrals. Respondent also failed to understand her children's trauma and to take responsibility for her actions in causing that trauma. The trial court further noted respondent's failure to progress beyond supervised parenting time even though the children were removed in June 2019.

At trial, respondent testified that the children were told "to be bad at visits." And the caseworker described the visits she supervised typically involved respondent watching videos with the children on respondent's phone and "hanging out." At some visits, respondent provided food

---

[3] Respondent does not dispute that more than 182 days passed between the initial dispositional order entered on December 5, 2019, and the termination order entered on October 1, 2021.

that caused an issue for one child. Further, LH repeatedly sought respondent's attention without success, leading LH to escalate. One of the visitation supervisors opined that while she was not sure that anyone could control LH's behavior when it reached a certain level, respondent certainly could not.

The court credited the caseworker's testimony that respondent triggered LH and found that parenting time ended early because of respondent's conduct. For example, during parenting time in March 2021, respondent heatedly confronted the caseworker after she expressed that respondent needed to accompany LH to the restroom due to prior incidents. Respondent's escalated response prompted another person in the office to call the caseworker to see if the caseworker needed assistance. During this same event, respondent repeatedly swore at the caseworker in front of the children and told the caseworker that she "hated" the children. The following week, LH confronted respondent about this behavior.

In light of respondent's outbursts at the caseworker and others, the trial court was concerned about her ability to parent two traumatized children, who required stability. It opined that respondent's actions were "a reflection of [her] lack of emotional regulation," which was an "issue with regard to [the] stability in the household if she w[as] parenting." Stated otherwise, the court questioned whether respondent would be "able to regulate her emotions so that she's not creating an atmosphere that would be agitating and traumatic to young children." In the court's view, respondent's actions suggested that she was unable "to regulate her emotions and . . . provide a stable environment . . . ."[4]

Respondent herself recognized that her mental health was a barrier to her parenting. Respondent admitted to anxiety and other mental-health needs, but she never completed the psychological evaluation that the PATP recommended. Again, DHHS had referred, and even scheduled respondent for that service, but she failed to follow through because she had begun working. Respondent acknowledged "this is not much of an excuse."

Additionally, respondent had been involved in domestically violent relationships and made excuses for her abusers.[5] But, after a May 2020 domestic-violence incident, respondent engaged in counseling. Thereafter, she refused to execute a release to provide information to DHHS

---

[4] Respondent had also told the caseworker to stop contacting her, she had accused one of the foster parents of sexual abuse, and she had seemingly accused both foster parents of mistreating her children. The court did not credit respondent's allegations as DHHS investigated and found that they lacked support. At trial, respondent admitted that she had not read the termination petition because she "figured it'd be some bull****" related to the sexual abuse allegations.

[5] As part of her current sobriety, respondent testified that she was not to be involved in a relationship for a year.

because "it gets used against me . . . ."[6] The trial court determined that respondent did not provide any verification of the services that she claimed to be engaged in at the Women's Resource Center.

Turning to respondent's substance abuse, respondent tested positive for amphetamine, methamphetamine, tetrahydrocannabinol (THC), cocaine, nordiazepam, fentanyl, and oxycodone from October 2019 through January 2021. Respondent also refused 21 tests, which were treated as positive. Although respondent testified that she had been "clean" since January 11, 2021, she tested positive for amphetamine and methamphetamine two weeks later. Respondent did not resume substance abuse treatment until March 2021, while residing at a sober living home.

Respondent also re-engaged in counseling at that time. At trial, respondent testified that her substance abuse was the focus, but other issues were discussed.[7] Again, despite the caseworker's repeated requests for information,[8] it was not until July 2021, during the termination hearing, that respondent presented a letter from her counselor to the trial court. The letter simply informed that respondent "is actively engaged in individual and group Outpatient Therapy Services with Addiction Treatment Services since 3/23/2021 through the present time."

The court concluded that respondent's drug use appeared to be in remission. But the record was devoid of information regarding exactly how respondent had addressed addiction and prepared to maintain this current period of sobriety. The trial court further concluded that there was no indication that respondent's current sobriety would continue given her long-term history of substance abuse, numerous substance abuse treatments, and relapse. Respondent herself admitted that she would be lying if she said she did not fear relapse. And respondent was unwilling to share information with DHHS so that it would be able to verify what she had been doing to address her addiction.

As far as housing stability, respondent moved several times. Respondent was evicted from her apartment due to her then-partner's domestic violence. Respondent was also evicted from the Women's Resource Center in January 2021, after a confrontation with her roommate contrary to the Center's policy. Respondent denied she was evicted, and claimed that she left due to her roommate's drug use. During trial, however, respondent, for the first time, admitted that she had used drugs with her roommate—something she had earlier denied to the caseworker.

---

[6] Respondent admitted that she did not want DHHS to know that she was making excuses for her abuser.

[7] At trial, respondent testified that she was unsure of her counselor's last name and admitted that they had never met in person, and, instead, had sessions via phone.

[8] The caseworker testified that the counselor informed her that respondent's authorization was required to obtain further information.

At the initial termination hearing on June 2, 2021, respondent testified that "if [she] need[ed] to move into a home today for her kids to come home," she would. But, when the court probed further, respondent recognized that it was not that simple.[9]

In sum, from June 2019 through the final termination hearing in October 2021, respondent only made an effort to engage in services in 2021, and only provided limited proof of her engagement in services during the termination hearings. While the trial court commended respondent's "recent," "good faith" efforts to address her drug addiction, it continued to exist. And the trial court determined that it would not be rectified within a reasonable time given the children's ages. Given the evidence presented at trial, the trial court did not clearly err in concluding that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).[10]

## B. BEST INTERESTS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). A trial court should focus on the child, not the parent, in determining the best interests of the child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making this determination, "the court may consider the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ."

---

[9] On July 27, 2021, the last day proofs were presented for the termination trial, respondent testified that she had arranged for suitable housing and would be signing a lease on August 1, 2021. During a subsequent hearing, respondent presented a signed lease.

[10] In light of our conclusion that termination was appropriate under MCL 712A.19b(3)(c)(*i*), we need not address the remaining statutory grounds. See *In re VanDalen*, 293 Mich App at 139. In the interest of completeness, however, we also cannot conclude that the trial court erred in terminating respondent's parental rights under MCL 712A.19b(3)(j) ("[t]here is a reasonable likelihood that based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."). Because respondent failed to comply with the PATP, notably the psychological evaluation and the trauma-informed parenting class, she could not demonstrate any benefit from those services. Indeed, respondent lacked "emotional regulation" and demonstrated a lack of stability. Respondent had been in a domestically violent relationship and never progressed to unsupervised visitation despite the length of time the children had been in care. Respondent's outbursts occurred in the children's presence and were triggering for LH. Furthermore, it was unclear whether respondent "fully addressed her drug addiction." Respondent's engagement was "way, way late in the process," occurring only after "termination of parental rights [was] . . . at the forefront . . . ." And, even after respondent began to engage in substance-abuse services, she "refuse[d] to provide information on what [she was] doing." Similarly, "way, way late in the process," the trial court received some documentation regarding respondent's treatment, but it could not conclude she had addressed her addiction "as she needs to and at the level she needs to." For these reasons, the court concluded that there was a risk of emotional and physical harm to the children if returned to respondent.

*In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014), as well as the parent's "history of mental health and substance abuse problems," *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

Respondent challenges the trial court's determination that it was in the best interests of the children to terminate her parental rights because the trial court failed to "include[] a robust explanation of her treatment and newfound sobriety." Doing so, respondent contends "would allow a reevaluation of the various risks to the children as considered by the [c]ourt."

Respondent's drug treatment and sobriety, however, were not the only factors that the trial court considered. *In re AH*, 245 Mich App at 89. The trial court permissibly considered several other factors, and indicated that it placed more emphasis on these factors in reaching its decision, such as respondent's parenting ability, the children's need for stability, *In re Olive/Metts*, 297 Mich App at 41-42, and respondent's visitation history with her children, *In re White*, 303 Mich App at 714. If, as respondent argues, the trial court record had included additional evidence to support respondent's drug treatment history and sobriety, the trial court's decision would have likely remained the same because the trial court based its best-interests determination primarily on respondent's lack of parenting skills, while also relying on her lack of stability and her drug addiction.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that her trial counsel's performance was ineffective because counsel failed to call witnesses to corroborate her testimony. We disagree.

Respondent had a statutory right to the assistance of counsel. See MCL 712A.17c(4). In examining a claim of ineffective assistance of counsel in a termination proceeding, this Court applies by analogy the principles of ineffective assistance of counsel developed under the criminal law. See *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). This means respondent "has the burden of establishing the factual predicate for her claim of ineffective assistance of counsel[.]" See e.g., *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). And to establish the right to a new trial premised on ineffective assistance of counsel, respondent must show that "(1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced" her. *In re Martin*, 316 Mich App at 85. See also *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020). "Decisions regarding what evidence to present and whether to call . . . witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77.

At trial, respondent's counsel initially indicated he anticipated calling four to six witnesses. Later, he informed the court that he would call four witnesses and he called respondent's first caseworker, two individuals who supervised some of respondent's visits, and respondent. Counsel also presented a letter from respondent's counselor at the sober-living facility and drug test results to demonstrate her continued abstinence.

When the trial court made its factual findings as to the statutory grounds for termination, it addressed MCL 712A.19b(3)(g). The court stated that it did not have information from individuals at respondent's facility concerning the timeframe for her successful completion of her sobriety or the support structure necessary to maintain it. The court said that the only information received was respondent's "self-report," and that respondent had failed to provide DHHS with a release so that it would acquire the information and failed to present individuals from the facility to testify about those matters. Although the court recognized that it had received some documents from the facility, it could not "ascertain . . . whether . . . [respondent's] in a place . . . [to] be able to maintain her sobriety for a reasonable time . . . ."[11]

On appeal, respondent suggests that, in light of the trial court's remarks, counsel's failure to present witnesses to support her testimony that her current sobriety would continue made a difference in the termination trial's outcome. But respondent does not identify the witnesses counsel should have called or detail the nature of their testimony. Thus, respondent has not established the factual predicate for her claim. *Hoag*, 460 Mich at 6. Additionally, we presume that counsel's actions at trial, presenting the letter from respondent's counselor, providing numerous negative drug screens, and calling four witnesses to testify, were matters of trial strategy. *Rockey*, 237 Mich App at 76. This Court cannot "substitute its judgment for that of counsel regarding matters of trial strategy," and it does not "assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. Notably, the remarks respondent relies upon were made with regard to a ground for termination that it rejected.[12] Accordingly, respondent has failed to demonstrate that counsel's performance was deficient and that she was prejudiced. *In re Martin*, 316 Mich App at 85.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick

---

[11] Moreover, as already mentioned, the court ultimately rejected MCL 712A.19b(3)(g) as a ground for termination of respondent's parental rights because DHHS's termination petition contained outdated statutory verbiage. In any event, as to the other two statutory grounds, the trial court raised like concerns about respondent's failure to be transparent about her substance abuse treatment.

[12] To the extent the trial court employed similar reasoning in deciding termination was warranted under two other statutory grounds, we note respondent's pattern of controlling the information she shared with DHHS and the court, especially when she recognized that it could be harmful as with her domestically-violent relationship.